## RACK v. LEE & SIMMONS, Inc., et al.

United States District Court
S. D. New York.

May 28, 1952.

Jacob Rassner, New York City, and Theodore D. Rothenberg, Brooklyn, proctors for libelant (Thomas J. Doyle, New York City, of counsel).

John P. Smith, New York City, proctor for respondent (Albert S. Commette, New York City, of counsel).

Alexander & Ash, New York City, attorneys for respondent-impleaded (Sidney A. Schwartz, New York City, advocate).

McGOHEY, District Judge.

The libelant,[1] a stevedore, claims he was injured while unloading sugar from the covered barge "Wandercliff" owned by respondent Lee & Simmons, Inc. The latter impleaded Waterfront Loaders Co. which loaded the cargo.[2] It also pleaded limitation of liability to $10,000, the alleged value of the barge. On libelant's motion the claim for damages was reduced to that sum.

The "Wandercliff" was a conventional covered barge, with three hatches, and doors on each side below the hatches. The cargo consisted of 4,200 bags of sugar each weighing 100 lbs. It had been loaded on May 7, 1947, by Waterfront Loaders Co. at a pier in Brooklyn where the barge remained until about 5:00 A.M. on May 8th. The barge was then towed across the East River to Pier 37 on the east side of Manhattan and made fast, bow in, alongside the ship onto which the sugar was to be transferred. No collision or other accident occurred to the barge between its loading and unloading. The unloading began at 8:00 A.M. on May 8th.

Libelant testified on direct examination to the following. Prior to the date of the alleged accident he had worked as a stevedore for only two weeks, and had never before handled a cargo of sugar. He had formerly worked as a truck driver. He was one of a gang of eight assigned to work at the port door below the number two or middle hatch of the barge at about 9:00 A.M. on the morning of May 8th. Another gang had previously begun work at the port door below the number one hatch which was at the after or offshore end of the barge. This gang worked across the barge, "fanning out towards the number two hatch." Libelant's gang also worked across the barge and "fanned out" towards the number three hatch, which was on the forward or shore end of the barge. By 11:30 A.M. libelant's gang had worked about two-thirds of the way across the barge, creating an aisle about 10 feet wide. The bags on the aft or offshore side of this aisle were piled 10 high. They had not

1. This suit was commenced as a civil action. There being no diversity, it was by order dated March 6, 1952, transferred to the Admiralty under a court approved stipulation that the alignment of parties would remain the same. See Admiralty Rule 56, 28 U.S.C.A.

2. On motion of Lee & Simmons, Inc., its claims against Brady & Gioe, Inc. and Terminal Stevedoring Co., Inc. were dismissed.

been touched by libelant's gang. He was working with his back to these. As he and his partner pulled down a bag from the top of the tiers to his right (that is, the tiers of bags along the starboard side of the barge at right angles to the offshore side of the aisle), some bags behind the one they pulled, fell to the deck. When he bent over to put these into the sling which was being loaded, a bag from the tiers behind him on the offshore side of the aisle fell and landed on his lower back, knocking him to the deck. He "thought [his] back was broke" and asked his companions not to touch him after they removed the bag from his back. After a few minutes he got up, walked to the port side of the barge and climbed the ladder to the ship's deck. He proceeded across the deck and down to the dock, where he walked unassisted to the timekeeper's shack and reported the accident.

Two fellow-workers in libelant's gang were called and their testimony was substantially the same as his. One of them is at present a fellow-worker of the libelant in a trucking company. All three said the bags were stowed "bag on bag," that is, each bag was laid lengthwise on top of another, with their ends pointing in the same direction, and that the tiers ran up perpendicular to the deck. While the libelant said "some bags" had slipped from the upper tiers as the men worked, his companions said bags fell frequently and that all in the gang cautioned one another "we have to watch ourselves." One of them said complaint was made to their foreman about this but nothing was done. The other said no complaint was made.

According to the records of libelant's employer, discharging began at 8:00 A.M. and was completed at noon. This was not disputed. Neither was it disputed that four hours was adequate for the work. Accordingly, by 11:30, when the accident is alleged to have occurred, there could not have been many bags left on board the barge. In any event, it is most unlikely that the bags at libelant's back were still in a tier ten bags high because, according to libelant, the gang whose job it was to unload those, had been working for some time prior to 9 o'clock. They had undoubtedly started at 8 and by 11:30 must have been just about finished with their area which, as I understand libelant's testimony, is where those very bags were stowed.

However, although he was struck by some bag, he has failed to establish that the accident resulted from unseaworthiness or the negligence of Lee & Simmons, Inc. or Waterfront Loaders Co. Liability is predicated on alleged improper stowage. It seemed to be agreed that one accepted and usual method is to pile bags in "box fashion." In this method, two bags are laid side by side with their ends pointing in the same direction and covered by two bags whose ends point at right angles to the direction of those beneath. On cross-examination libelant said he was not familiar with this method of stowage. In two separate pre-trial depositions, however, he had accurately described this method and in one of them he had said the bags on the "Wandercliff" were so stowed. On re-direct examination he said the bags were boxed "just at the door." The foreman of the stevedores who loaded the sugar testified the bags were stowed according to a method he had always used during his 15 years as a stevedore, handling "mostly sugar," for the last 10 of which he was a foreman. In this method he first built a bulkhead of bags to the height of ten bags at one end of the barge. Then he stowed bags in box fashion against this bulkhead in such manner that the boxed bags "leaned a little towards the bulkhead." He proceeded in this manner up to about midships. Then he built a similar bulkhead at the other end of the barge and continued as before towards midships, where an aisle of two or three feet was left across the barge. Thus the bags on either side of this aisle were tiered about ten bags high in "box fashion" and leaned slightly towards their respective fore and aft bulkheads. No testimony was offered that this was not a safe and proper method of stowing. Indeed, it appeared to be conceded that it was. This witness is no longer employed by Waterfront Loaders Co. I accept his testimony.

The barge captain also testified. His testimony was not very helpful on the question of how the bags were stowed, because he frankly said he had no recollection on that except that it was "all right." However, he was sure that nothing happened to the barge on its voyage across the river; that the cargo was not disturbed from the time it was loaded; and that no complaint had been made to him by anyone during the discharging operation.

The libelant, in my opinion, has failed to sustain his burden of proving either unseaworthiness or negligence. Accordingly, it cannot be concluded that either was the proximate cause of the injuries claimed. Therefore, the libel against Lee & Simmons, Inc. will be dismissed with costs. The libel and interpleading petition against Waterfront Loaders Co. will be dismissed without costs.

Settle decree on notice.